## STATE v. HAMILTON.

### [77 South. 650, Division A.]

1. COLLEGES AND UNIVERSITIES. *Power to lease lands. Laws* 1860, *chapter* 118, *Section* 1.

    The power granted to the trustees by chapter 118, Laws 1860, and again by section 745, Code 1880, to lease the lands of the University of Mississippi, is a continuing one, and therefore is not exhausted as to each parcel of land by one lease thereof.

2. SAME.

    That a first lease had some time to run when a second was made has no bearing upon the power of the trustees to make the second lease.

APPEAL from the chancery court of Lafayette county.

HON. J. G. McGOWEN, Chancellor.

Suit by the state of Mississippi against Mrs. S. E. Hamilton. From a judgment for defendant, the state appeals.

The facts are fully stated in the opinion of the court.

*S. A. Morrison,* for appellant.

The University of Mississippi is a public corporation, a creature of the legislature, subject to the political or legislative power of the state at all times; an instrumentality of the state, having no vested power save by and through the state by the legislature thereof. *State* v. *Vicksburg & Nashville R. R. Company,* 51 Miss. 361; *University* v. *Waugh,* 105, Miss. 623.

Our legislative history relative to this class of institutions shows that the state of Mississippi has ever held a close grip upon its University and also other state schools. Both the original lease and the second lease for a term of years refer to the Act of 1860, directly or indirectly, and it is upon this law that this case is contested, and the lease itself.

The law of 1860 presents no difficulty in construction; its verbiage is plain; the board of trustees was authorized to make a lease for a term of years; certain conditions and considerations are stated in the law, and the purpose therein is made clear, the only authority given by this Act of 1860 to the board of trustees is to lease for a term of years. The words "lease" and "term of years," have a legal, ordinary, determined, and common-law meaning; a meaning, a definition known to all, and the use of the words, is in accord with the application of the same by the board in the original lease under which the lessee took and bound herself to deliver the property, the dwelling and outhouses in good state of repair at the end of the term of years.

Did the legislature of 1860 intend by this act to authorize the board of trustees to grant a second term of years? There is neither word nor sentence implied or expressed from which such meaning may be drawn. The court will look to the whole act for the construction thereof; when the whole is examined, it appears, even stronger than part thereof quoted, to mean the opposite to a power in such board to lease for a second term of years.

But suppose the board of trustees of the University had leased for a term of years without day of beginning and termination. What would have been the result? The lessee must begin on his lease contract in a reasonable time and while I do not believe our court would so hold in this case, yet the longest possible time that would pass would be for life of the tenant. *Harley* v. *O'Donnell,* 9 Pa. Co. Ct. R. Cm., pages 56-7; an estate of greater dignity by fiction but not as valuable as the term of years given in this instance, originally.

The legislature, from another viewpoint, may have intrusted the date of termination or the number of years of the term to the board on the theory that the local conditions and the considerations, the board was to

secure the other contracting party, but it cannot be that the long term of ninety-nine years was intended.

· The court will construe and not construct a statute of the legislature. The state alone has the right to look forward to the termination of the original term of years authorized by the Act of 1860 to decide what will be its policy for the future. *Smith* v. *Cornelius,* 20 L. R. A. 747; *De Soto County* v. *Weatherford,* 75, So. 114; *Little* v. *The Board of Regents of Kansas,* 29 L. R. A. 378.

The laws relative to the University are collected in the Code of 1857, chapter eleven; again such laws are collected and brought into the Code of 1871, chapter 40; thus just before the Act of 1860 and prior to the action of the board of trustees in putting into effect the Act of 1860, see the power brought together; the Act of 1860 does not appear in any Code. But several acts have been passed by the legislature touching in certain ways the act of 1860.

This lease was made in 1872, we find the first act of the legislature in regard thereto, that is to leases in section 766, of the Code of 1880, chapter 17. The "whereas" or reason for the Act of 1880, is given in the words following: "whereas this section exempts the buildings and improvements of the lessee from state, county and municipal taxation; same in Code of 1892, section 4459, same Code 1906, section 5036; simple exemption from taxation in order to afford cheap board to the students. Chapter 17, Code 1880 section 785." There is a change made from the language of Code of 1871, and the last part of the section authorizes the university to accept donations. There is no change from 1880 to the present time as brought forward in the Codes of 1892, and 1906. Code of 1892, section 4460, Code 1906, section 5037, provides that University lands shall not be leased without provision for payment of annual rent to the University.

This covers legislation as to the leases authorized by the Act of 1860. There is nothing in any act to indicate the slightest authority in the board of trustees to add another term of years to the original lease for a term of years; on the contrary there is recognition of the fact that part of the land was leased and part not leased, throughout.

The trustees of the University have neither in term time nor at the end of the term of years the power to lease another term of years without legislative authority directly given. Such was not the intent of the law; words having a distinct, definite, ordinary and common-law meaning must be given that meaning. *Daily* v. *Swope,* 47 Miss. 367; *Hawkins* v. *Carroll County,* 40, Miss. 758. Every pivotal word or phrase, or sentence in the Act of 1860 is perfectly clear, definite and conclusive. Lease, for a term of years, in the first section of the act not only have the legal but common-law meaning; waste, in the second section of the act, together with the other words in connection therewith, the trustees authorized themselves or through another to protect the lands from waste, etc; so that both sections of the law are in perfect accord; a perfect law, a perfect lease, for a term of fifty years thereunder the language is plain and no subsequent action by the board of trustees of the University can becloud that plain and harmonious act and the lease thereunder; where the language is plain nothing is required or may be appealed to for its interpretation. *State* v. *Henry,* 87 Miss. 125; *Moss Point Lumber Company* v. *Harrison County;* 89 Miss. 448-588.

Has the board of trustees of the University of Mississippi a right under the Laws of 1860 to lease the lands for two terms of years; to add one term to another term thirty years before the expiration of the original lease, or at the termination thereof. A basis for such action cannot be found; the University of Mississippi lives by

virtue of our statutes. *Prima facie,* the statute will be interpreted not to bind the state; *Mayrhofer* v. *San Diego Bd. of Edu.,* 89 Cal. 110; *United States* v. *Hoar,* 2 Mason, 311; Bishop, Written Laws, sec. 142; Sedgw. Stat. & Const., L., page 337.

*Lee M. Russel,* for appellee.

The law under which the University was authorized to lease the lands, and by the way which authorized the state to bring this suit rather than the University, is set forth in Acts of 1860, page 178, chapter 118.

Pages thirteen and fourteen of record shows that the title to all the university lands is in the state and not in the University. Possibly the opinion is prevalent, that that which is known as University land belongs to the University, which as a matter of fact it, does not, but the title is wholly in this state as shown by the above deeds and has ever remained so.

Page seventeen of record shows copy of the order of the board of trustees June 29, 1892, authorizing this board to extend all leases for a period of twenty-five additional years.

Page eighteen of record, etc., shows the first deed of the University to Mrs. C. M. Malone dated October 29, 1872. Page twenty-one of record, etc., shows the deed of the university to Mrs. A. J. Barr and we call the court's especial attention to the last few lines of this deed which reads: (Latter part of page twenty-one of record.) "For an additional twenty-five years, and said extension to begin at the expiration of the term of fifty years," which record deed shows beyond any controversy that the proper state authorities stated just what they meant when, by the above words, they gave the twenty-five years extension from the expiration of the fifty years and not from any authorizing the board of trustees to grant renewal

or extension leases.   Page twenty of the record shows Mrs. Barr's deed to appellee Mrs. Hamilton.

In appellant's brief he seems to claim as his sole and only argument that the state's agents, the board of trustees of the university, had no authority to grant a renewal or extension of any leases.   Yet he gave no authority in point nor do we believe there is any authority that would hold that under the Statute of 1860, set forth in full above, that the board of trustees acting for the state did not have, and does not now have full and absolute authority to lease and re-lease these lands.   They are the estate's agent; the state has seen fit to give them these powers, the power has never been changed since given in 1860 and why should they, by what right should a lease entered into in good faith as this case, be canceled when an innocent party is committing no waste and committing no injury but complying fully with their contract with a state official?   Courts are for the purpose of dealing out justice and in maintaining contracts as written.   We contend that by virtue of the Acts of 1860, *supra,* that just so long as there is a board of trustees that they have the full and exclusive right to represent this state in the leasing of these lands.

It is a universally recognized rule that a court of equity will compel specific performance by the lessor of his covenant and agreement to renew the lease.'' 18 Am. & Eng. Ency. Law, page 695.   (C), and authorities therein stated.   The case at bar is a much stronger right vouchsafed by law to the lessee than the above authority.

We feel sure that no sound holding can be cited, to show that the trustees acting under the authority of the law did not have the full right to lease and re-lease until such authority shall be taken from them.   We respectfully submit that the argument advanced by appellant and the authorities cited, are not in point.

SMITH, C. J., delivered the opinion of the court.

This suit was instituted by appellant for the purpose of obtaining the cancellation of a lease executed by the trustees of the State University to certain land owned by the state and on which the University is situated. In 1872 the trustees of the University leased the land here in question for a term of fifty years to Mrs. C. M. Malone, and Mrs. A. J. Barr became the owner thereof—that is, of the lease—by mesne conveyances. This lease was executed pursuant to a statute, passed in 1860, which provides:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that the trustees of the University of Mississippi be, and they are hereby authorized and empowered, to lease for a term of years, any part of sections No.————, township eight, range three west, lying east of the Mississippi Central Railroad, and being known as the tract of land on which the University of the state is located, to suitable persons, for the purpose of having residences or boarding houses erected thereon, for the accommodation of students, and under such restrictions as the board of trustees may impose: Provided, that it shall not be lawful for any person to erect or keep a business house for the sale or disposition of merchandise on said lands."

In 1880 the laws relating to the University were brought forward in the Code of that year as section 745, which provides.:

"The University of Mississippi, incorporated 24th of February, A. D. 1844, shall continue to exist as a body politic and corporate by that name and style, with all its property, real and personal, and with all the franchises, rights, powers and privileges heretofore conferred on it by law, or properly incident to such a body, and necessary to accomplish the end of its creation; and may receive, hold and dispose of all real and personal property conveyed to it for such purpose."

In 1892 the trustees of the University granted to
Mrs. Barr an extension of the lease formerly made
to Mrs. Malone and now owned by her for a term of
twenty-five years, beginning at the expiration of the
first term, at a rental of "five dollars a year from the
time of extension to the end of the extension," the
new lease or extension to be forfeited upon failure of
the lessee to pay any installment thereof.    Both of
these leases were assigned by Mrs. Barr to appellee,
and the effort here is to cancel the second.  One of
the grounds upon which this is sought to be done is
that the board of trustees was without power to exe-
cute it.

While the question is not without difficulty, we are
of the opinion that the power granted to the trustees
of the University by chapter 118, Laws of 1860, to
lease lands, is a continuing one, and therefore was not
exhausted as to each tract of land when a lease thereof
was made, which power seems to have been again ex-
pressly granted to these trustees by section 745, Code of
1880.    That the first lease had some time to run when
the second was made was a fact which the board might,
and very probably did, take into consideration in de-
termining whether the second lease should be made,
but has no bearing upon the question of its power to
make the lease.

Another ground upon which it is sought to cancel
this lease is that no payments have been made to the
University of the rent reserved therein.    This pro-
vision of the lease is somewhat ambiguous; but, con-
struing it, as we must, most strongly against the lessor,
it means that the rent reserved begins not from the
date of the instrument, as contended by appellant,
but from the time the extension or second lease begins,
so that no payment to the University by appellee be-
cause thereof is yet due.

*Affirmed.*